IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
EASTERN DIVISION

| | |
|---|---|
| CRAIG SCHULTZ AND BELEN SCHULTZ,<br><br>Plaintiffs,<br><br>vs.<br><br>VERIZON WIRELESS SERVICES, LLC,<br><br>Defendant. | No. C14-2038<br><br>RULING ON MOTIONS TO ENFORCE SETTLEMENT |

This matter comes before the Court on the Motion for Enforcement of Settlement or, in the Alternative, for a Settlement Conference (docket number 19) filed by the Defendant on January 13, 2015, and the Motion for Enforcement of Settlement (docket number 25) filed by the Plaintiffs on January 27. Pursuant to Local Rule 7.c, the motions will be decided without oral argument.

## I. PROCEDURAL HISTORY

On June 17, 2014, Plaintiffs Craig Schultz and Belen Schultz filed a complaint against Defendant Verizon Wireless Services, LLC[1] ("Verizon"), seeking damages for alleged violations of the federal Telephone Consumer Protection Act and the Iowa Debt Collection Practices Act. On September 8, Verizon filed a motion to dismiss and to compel arbitration.[2] On November 7, while Verizon's pre-answer motion was pending,

---

[1] Verizon states that it was incorrectly sued as Verizon Wireless Services, LLC, and that its true corporate name is Cellco Partnership d/b/a Verizon Wireless.

[2] In their response filed on October 25, Plaintiffs agreed that the matter should be sent to arbitration. Plaintiffs requested, however, that the action be stayed, rather than
(continued...)

Plaintiffs filed a "notice of settlement." On November 17, the Court filed an Order of Case Dismissal, directing the parties to file the settlement documents within 30 days. The deadline was later extended to January 19, 2015.

On January 13, 2015, Verizon filed its motion to enforce the settlement. On January 27, Plaintiffs responded with their own motion to enforce the settlement. Verizon filed a response on February 13.

## II. RELEVANT FACTS[3]

Following an exchange of emails between October 27 and October 31, 2014, the parties agreed to a cash settlement in a specified amount. *See* Plaintiffs' Exhibit 1 (docket number 29). The parties are unable to agree, however, regarding the language to be included in a "settlement agreement and release between Craig Schultz and Belen Schultz, and Verizon Wireless." Verizon believes the agreement is reflected in its Exhibit A (docket number 24), while Plaintiffs believe the agreement is reflected in their Exhibit 2 (docket number 29-1).

The fighting issue is whether the settlement agreement will include a "non-disparagement" clause. Paragraph 21 of Verizon's proposed settlement agreement provides that the parties shall not make any disparaging remarks against the other party. Plaintiffs' proposed settlement agreement omits that clause.

---

[2](...continued)
dismissed, while arbitration was pending.

[3] "As a general rule, a 'district court must hold an evidentiary hearing when there is a substantial factual dispute concerning the existence or terms of the settlement agreement.'" *TCBY Systems, Inc. v. EGB Associates, Inc.*, 2 F.3d 288, 291 (8th Cir. 1993) (quoting *Gatz v. Southwest Bank*, 836 F.2d 1089, 1095 (8th Cir. 1988)). In this case, however, it would appear that the facts underlying the putative settlement agreement are undisputed. Accordingly, the Court finds that no hearing is necessary.

After the parties reached an agreement regarding the *amount* of the settlement, counsel for Verizon apparently sent counsel for Plaintiffs a draft settlement agreement that included, among other things, a non-disparagement clause.[4] On November 12, Plaintiffs' counsel apparently responded by sending a revised settlement agreement to Verizon's counsel. According to Verizon's brief, none of the proposed revisions dealt with the non-disparagement clause, which remained as part of the agreement returned by Plaintiffs.[5]

In its speaking brief, Verizon asserts that the parties then negotiated over the course of the next several weeks regarding the terms of the written agreement. According to Verizon's brief, "[d]uring this time, Plaintiffs' counsel never mentioned the non-disparagement clause, never modified that clause, and never removed that clause."[6] Plaintiffs' counsel, Joseph Panvini, states in his sworn declaration that Verizon's attorney emailed him a proposed settlement agreement on November 12 and "over the next month we exchanged emails regarding the discussion of certain terms to be included or not included in the release agreement."[7]

According to Mr. Panvini, he did not send Plaintiffs a complete copy of the proposed stipulation for their review until December 12, "at which time I colloquially stated in an email to [Verizon's attorney] that 'we will get it executed.'"[8] Plaintiffs subsequently informed Mr. Panvini that they would not sign the release as drafted.

---

[4] A copy of that draft agreement, and any accompanying correspondence, was not provided to the Court.

[5] The Court was not provided with a copy of the revised settlement agreement or any accompanying correspondence.

[6] Defendant's Motion (docket number 19) at 2, ¶ 6.

[7] Declaration of Joseph Panvini (docket number 25-1) at 2, ¶ 7.

[8] *Id.*, ¶ 10.

3

Mr. Panvini called Verizon's attorney on December 17 and told her that "if Defendant made certain other concessions, that I would convince Plaintiffs to leave in the non-disparagement clause."[9] Despite his representation, however, Mr. Panvini was unable to convince his clients to sign the release containing the non-disparagement clause. According to Verizon's brief, that was the first time that it was informed that Plaintiffs had a problem with the non-disparagement clause.

On December 30, Mr. Panvini sent Verizon's attorney a settlement agreement signed by Plaintiffs, but which did not include a non-disparagement clause. *See* Plaintiffs' Exhibit 2 (docket number 29-1). That proposed agreement was unacceptable to Verizon.

## III. DISCUSSION

Both parties ask the Court to enter an order enforcing *their* version of the settlement agreement. The Court can easily dispose of Plaintiffs' motion. That is, it is clear that Verizon never agreed to a settlement which did not include a non-disparagement clause. Verizon's motion presents a somewhat closer question. Verizon argues that because Plaintiffs did not complain about the non-disparagement clause until all of the other issues had been resolved, the Court should conclude that Plaintiffs had agreed to that provision.

"Basic principles of contract formation govern the existence and enforcement of the alleged settlement." *Chaganti & Associates, P.C. v. Nowotny*, 470 F.3d 1215, 1221 (8th Cir. 2006). *See also Fees v. Mutual Fire and Auto. Ins. Co.*, 490 N.W.2d 55, 58 (Iowa 1992) ("Settlement agreements are basically contracts, and in reviewing them, we turn to the general principles of contract interpretation."). To have a valid binding contract, there must be mutual assent. *Matter of guardianship and conservatorship of Price*, 571 N.W.2d 214, 216 (Iowa App. 1997). A recognized "general proposition of law" is that "an agreement to agree to enter into a contract is of no effect unless all of the terms and

---

[9] *Id.*, ¶ 12.

4

conditions of the contract are agreed on and nothing is left to future negotiations." *Crowe-Thomas Consulting Group, Inc. v. Fresh Pak Candy Co., Inc.*, 494 N.W.2d 442, 444-45 (Iowa App. 1992).

Here, it is clear that the parties reached an agreement on October 31, 2014, regarding the *amount* to be paid. While the parties agreed on the amount to be paid, the remaining terms of the agreement were left to future negotiation. Over the next month and a half, the parties negotiated on the remaining terms of the agreement. It is undisputed that the parties were unable to agree on the issue of whether the settlement document would include a non-disparagement clause. That is, there was no mutual assent. *Magnusson Agency v. Public Entity Nat. Company-Midwest*, 560 N.W.2d 20, 26 (Iowa 1997) ("All contracts must contain mutual assent."). An agreement to settle, when all of the terms and conditions of the settlement have not been agreed on, has no effect. *Crowe-Thomas*, 494 N.W.2d 444-45. "A district court 'does not have the power to decide that a draft settlement agreement was binding when the parties did not agree on it.'" *McEnany v. West Delaware County Comm. School Dist.*, 844 F. Supp. 523, 529 (N.D. Iowa 1994) (quoting *Wang Lab., Inc. v. Applied Computer Sciences, Inc.*, 958 F.2d 355, 359 (Fed. Cir. 1992)). *See also TCBY Systems*, 2 F.3d at 289 (same).

An agreement to settle will not be abrogated if the remaining terms are not "significant." *Worthy v. McKesson Corp.*, 756 F.2d 1370, 1373 (8th Cir. 1985). "The fact that the parties left insubstantial matters for later negotiation 'does not vitiate the validity of the agreement reached.'" *Id.* (quoting *Tynka v. Elanco Products Co.*, 709 F.2d 1223, 1226 n.2 (8th Cir. 1983)). *See also McEnany*, 844 F. Supp. at 529 (same). However, the Court cannot find that inclusion or exclusion of the non-disparagement clause is an "insubstantial matter." Obviously, the parties believe that it is a critical issue, since it is apparently the only thing holding up the settlement. That is, Plaintiffs have

signed an agreement which excludes the non-disparagement clause, and presumably this case would be over if Verizon signed the same agreement.

Because the parties were unable to reach an agreement regarding the terms of the settlement, the Court finds that Verizon's motion to enforce its proposed settlement agreement should be denied. Similarly, the Court denies Verizon's motion for a settlement conference. There is only one discrete issue standing between the parties and a settlement. The Court believe that its input in that regard would be unavailing.

## IV. ORDER

IT IS THEREFORE ORDERED that the Motion for Enforcement of Settlement (docket number 19) filed by the Defendant and the Motion for Enforcement of Settlement (docket number 25) filed by the Plaintiffs are both **DENIED**.

DATED this 27th day of February, 2015.

_____
JON STUART SCOLES
CHIEF MAGISTRATE JUDGE
NORTHERN DISTRICT OF IOWA